## Case No. 13,105.

### SMITH v. SHANE et al.

[1 McLean, 22.] [1]

Circuit Court, D. Ohio. July Term, 1829. [2]

PUBLIC LANDS—MILITARY BOUNTIES—CONTRACT OF SALE—NOTICE—PLEADING IN EQUITY —WEIGHT OF ANSWER.

1. Notice reaches the conscience of the party, and he acquires no better title than the person of whom he purchased.

2. If denied by the answer, the notice must be proved by two witnesses, or by one witness and strong circumstances.

3. The 7th section of the act of congress respecting military bounties, passed March 1, 1800 [2 Stat. 15], which provides that no location shall be made or patents issued for lands, except to persons who performed the service, or their heirs; and that the patentee shall hold the same, free from any contract of sale, is limited to the patentee named in the section.

4. The policy was to protect a meritorious class of persons from contracts entered into under the influence of necessity or fraud. But where the patentee has conveyed, the grantee cannot shelter himself from his contracts under the above act.

5. As in this case, Buford, the patentee, was not made a party, nor any reason assigned in the bill why he was not, and as he stands in the same relation to the complainant, as Garrison stood to Hinde v. Findlay [1 Pet. (26 U. S.) 241], and as in that case, the decree was reversed, because Garrison was not made a party, that decision is considered conclusive in this case.

[Cited in Pratt v. Vattier, Case No. 11,117; Chester v. Chester, 7 Fed. 4.]

[This was a bill by James E. Smith against Shane and Meigs.]

Mr. Swan, for plaintiff.
Mr. Goodenow, for defendants.

OPINION OF THE COURT. This controversy arises respecting a tract of 500 acres of land in the United States' military district. The complainant represents, that in the year 1799, he entered into a co-partnership with one James Johnson, for the purchase and location of military warrants in the above district. That, in the year 1800, Johnson purchased a warrant, issued in the name of Colonel Abraham Buford, from John S. Wills, who had purchased the same. That, under the direction of the complainant, the warrant was located, and a patent, in the name of Buford, obtained in August, 1801. After the location of the warrant, the purchase money was paid by Wills to Buford, and the complainant and Johnson remained in possession of the land, paying the taxes, until the year 1817. That, in 1820, Johnson quit claimed to the complainant, their partnership being dissolved. That the respondent, Shane, by gross misrepresentation and fraud, with a full knowledge of complainant's equity, in 1815 obtained a conveyance of the legal estate from Buford to himself and Meigs. The com-

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed by supreme court (unreported).]

plainant prays that a conveyance of the land may be decreed to him.

The respondents deny the material statements in the bill, and rest their claim to the land on a bona fide purchase of the equitable interest of Wills, in 1815, and the conveyance from Buford; which, they allege, was fairly obtained. The partnership between the complainant and Johnson is shown by Joseph S. Randall and others, that it was dissolved, and a quit-claim executed for the land, as stated in the bill.

To prove the purchase of the warrant, the depositions of Johnson and Wills are relied on. Johnson states that he purchased the warrant about the beginning of the year 1800, from John S. Wills, for thirty-three dollars per hundred acres; and that he regularly paid the taxes on the land until the year 1817. In his deposition, Wills states that, many years before, Col. Thomas Gibson, then of Cincinnati, put into his hands, with or without transfer, he cannot remember, the warrant granted to Buford. That soon afterwards he went to Philadelphia, and took with him this, with other warrants of the same kind; and that, while in Philadelphia, he believes he sold some of them, and perhaps all, though he is not certain.

The location of the warrant, under the direction of the complainant, is satisfactorily proved by the depositions of Dekraft, Johnson and others. Buford acknowledges the payment of the consideration for the purchase of the warrant by Wills, and states that the warrant was placed by him in Gibson's hand to sell or locate: was informed afterwards that he had sold it; and, at the request of Wills, deponent sent a power of attorney to Gibson to make the conveyance. The possession of the complainant and Johnson, and the payment of taxes on the land, from the date of the patent to the year 1817, are proved.

To establish fraud in the purchase of the defendants, the depositions of Johnson, Kisely, Wills, Buford, and Canfield, are referred to. Johnson states that, in the year 1813, Shane applied to him, in Chillicothe, to purchase the land, and that deponent informed him he could not convey the tract, as it was held in partnership. That, a few days afterwards, Wills offered him twelve or fifteen hundred dollars for the land in behalf of Shane, but the sale was declined. Wills states that, some years after his journey to Philadelphia, where the warrant was sold, Shane applied to him to purchase the land; that the answer he gave is not recollected, but that repeated applications were made to him by Shane in different years, who stated that he had seen Col. Buford, who refused to sell on account of the claim of the witness. That at last, on Shane's showing a deed from Buford for the land, he agreed, for a certain sum of money, to give a bond, conditional that neither he, nor his heirs, executors, or administrators, would set up a claim against

Shane's. He denies ever having authorized Buford to convey the land to Shane; and he states that, in giving the bond to Shane, it was not his intention to sanction such conveyance. He states, that if he had been conscious of having an equitable right when he made the agreement with Shane, he would not have hesitated to convey it. Shane, he states, was well apprised of his claim, and paid him eleven hundred dollars when the bond was executed.

Buford states, that some time after the sale of the warrant to Wills, he received a letter from Shane respecting the land, which he answered, by saying that he had passed away his right through Col. Gibson. That some time afterwards, Shane called on him in Kentucky, exhibited evidences of claim to the land, among others, a direction from John S. Wills to make the deed to both of the defendants; and having some knowledge of Meigs, and high confidence in his character, he was induced to execute the deed. At the time informed Shane that the consideration money had been paid or secured. Col. Buford, in a letter to Shane, dated 20th August, 1812, states that he does not own any land in the United States' military district; that Col. Gibson undertook to locate lands for him there, which he afterwards sold, a part to him, and a part to his son-in-law, John S. Wills, to whom Col. Buford referred Shane for the information he desired. Another letter from Col. Buford to Shane is exhibited, dated June 28th, 1814, in which he states: "It would give me pleasure, was it in my power, to give you any satisfactory information respecting the lands you mention in your letter to me of the 18th instant. I apprehend, from your letter, that Col. J. Johnson is an inhabitant of the state of Ohio; if so, I have no knowledge of him. My recollection of those lands is very faint. I believe those lands, or a part of them, were located in my name, but I know not who they were granted to. I sold them to Col. Gibson, but I do not recollect who I made the assignments to; perhaps to John S. Wills, as he was made paymaster to me for them, but the price not yet received: I believe I have no claim to any of those lands, or can I say any thing as to their value. By searching the different offices, I suppose you might trace the title." George W. Canfield states, that, some time in the fall of the year, 1820, he heard a conversation between the complainant and Shane, at New Philadelphia, respecting the land which, at that time, Shane had purchased of Buford; in which conversation Shane said, that previous to his purchase, he called on complainant, and inquired if he had not some Western lands that he wished to dispose of? to which said complainant replied that he had some lands in the state of Ohio, and that if he, Shane, would call at his office the next day, he would attend to his inquiries. That, on calling the next day, a canvas bag, containing

a quantity of patents, deeds, &c., was handed to him, which he perused to his satisfaction, and then asked the complainant if he had any other titles? to which there was an answer in the negative, or an evasive one.

The respondents exhibit the deed from Buford, bearing date the 15th May, 1815; prove the payment of eleven hundred dollars to Wills, and show the bond he executed at the time. In this bond he binds himself, his heirs, executors, and administrators, in the sum of one thousand dollars, dated 2d October, 1815, "that he, nor his heirs, executors, or administrators, shall, at any time thereafter, commence suit, either in law or equity, against the said Shane, his heirs, or any person purchasing under him, for the tract of land in controversy." By the deposition of Gen. Herrick, they prove that about the month of January, 1815, he heard Wills, in a conversation with Shane, say to him that he had not, at any time, sold or disposed of any land warrant which had issued in the name of one Buford, to Col. James Johnson, or made any contract with him, or received any consideration for such purpose. And that, if Col. Johnson had at any time the possession of said warrant, he had obtained it at some imprudent moment; referring, as witness supposes, to a time when he was intoxicated.

The respondents prove by James Clark that Johnson sold a tract or two of land, to which he was not able to make titles; and that, in consequence, the witness did not believe that he had any title to the land in dispute. Reliance is placed upon this fact, and the impression which seems to have been made, that Johnson claimed lands to which he had no title; and, also, on the circumstance of the complainant not stating to Shane his title, when the patents and deeds were examined by him. The purchase of the warrant from Wills by Johnson is satisfactorily proved by the oath of Johnson, the equivocal admission of Wills, the fact of having possession of the warrant, the circumstance of its being located under the direction of the complainant, the patent having been obtained by him, and the possession of the premises. Payment of the consideration is sworn to by Johnson as having been made when the warrant was purchased.

Under this statement of the case, three points are presented for investigation. (1) The notice to Shane. (2) The contract, under the act of congress. (3) The parties to the suit.

The doctrine of notice is discussed by every elementary writer on the equitable jurisdiction of a court of chancery, and it is illustrated by numberless adjudicated cases. Notice reaches the conscience of the party, and, though he be a purchaser for a valuable consideration, yet, in equity, his rights are the same as were those of the person from whom he purchased. As the respondents deny the notice charged, it will be incumbent on the complainant to prove it by more than one witness. The statement of one witness, corroborated by strong circumstances, is sufficient. Johnson states, that in 1813, Shane applied to him to purchase the land, and afterwards sent Wills to him on the same errand. The circumstances going to show presumptive evidence, are, the possession of the land by the complainant and Johnson, the possession of the original patent to Buford, stating that he had no claim to the land, having sold it, through Col. Gibson, to Wills, to whom Shane was referred, and the statement of Buford when the deed was executed, the purchase from Wills, who denies ever having stated to Shane that he had never sold his interest in the land, and the conditions of the bond given by Wills at the time the eleven hundred dollars were paid to him by Shane.

When the deed was obtained from Buford by Shane, the complainant and Johnson had been in possession of the land thirteen or fourteen years. This of itself, was calculated to awaken inquiry as to the title, and it seems to have had this effect upon Shane. He asks the complainant for his title papers, and they are exhibited to him; among them was Buford's patent for this land. No special inquiry is made respecting it, but the general question asked whether he had any other titles, to which it is uncertain whether an evasive reply was made, or an answer in the negative. There seems to have been nothing said by Shane, from which the complainant could infer that he wished to know whether he had any title or claim to the Buford tract; and yet this circumstance is strongly relied on by Shane as going to show a want of title in the complainant, or a wilful suppression of it. Had the object of Shane's examination been fairly stated, and the complainant failed to apprise him of the claim he held to the land, the inference drawn would be just; but, under the circumstances, no such conclusion is authorized. The possession of the patent, connected with the possession of the land, was calculated to fix the presumption of title in the complainant. No man is bound to proclaim his titles to every inquirer, and, unless the object of the inquiry be specially stated, he can never sustain injury from a refusal to answer. The conduct of Shane seems to have been guarded, if not designed to gain some advantage. He was, no doubt, desirous of purchasing the land, and was unwilling to awaken the suspicions of the complainant. The letters from Buford, stating that he had sold the land, and his refusal to receive any consideration when he made the conveyance, could not fail to convince Shane that the equity was to be found in some one else; and that the deed, without consideration, could give but the shadow of title.

The purchase from Wills, and the payment made to him after the execution of the deed, forms the ground on which the defendant's

equity must rest. In his deposition, Wills states that he should not have hesitated to convey the equity to Shane, if he had been conscious that it was in him. The form of the bond executed goes strongly to show that both Wills and Shane had a knowledge that the equity had been transferred. If this had not been the case, why was not a conveyance executed in the usual form? And why would Shane consent to receive, not a transfer of the equitable title, but a bond, in a less penalty than the consideration paid, that neither Wills, nor his heirs, executors, or administrators, would set up a claim for the land? In this bond, Wills is cautious to incur no responsibility from a prior conveyance; and this must have been well understood by Shane.

These facts and circumstances, going to show a notice to Shane, are not rebutted by the declaration made by Wills to Shane, in the hearing of Gen. Herrick, nor by the paper referred to in the amended answer, in the hand-writing of Wills, stating the reasons why a mere contract for the sale of a warrant could not be enforced. It is of no importance what the general opinion may be, or the belief of any individual, respecting a title. If enough be made known in the negotiation for the purchase, to put the purchaser on inquiry, and lead him to a full knowledge of the title, it is all that equity requires. I cannot doubt that at the time Shane received the deed from Buford, he had notice of the complainant's claim, and must consequently be considered as a purchaser with notice.

Whether the contract set up by the complainant can be carried into effect, is the second point for investigation. The seventh section of the act of congress respecting United States military bounties, passed March 1, 1800, it is contended, makes void the contract. The words of the act are: "But no location shall be allowed, nor shall any patent be issued, for any lot or lots of one hundred acres, except in the name of the person originally entitled to such warrant, or the heir or heirs of the person so entitled; nor shall any land, so located and patented, to a person originally entitled to such warrant, be considered as in trust for any purchaser, or be subject to any contract, made before the date of such patent; and the title to lands acquired in consequence of patents issued as aforesaid, shall and may be alienated," &c. A part of this section is directory to the officers of the government in prohibiting any location, or the issuing of any patent, except in the name of the person originally entitled to it, or to his heirs. It is then provided, that lands thus located and patented shall not be considered as in trust for any purchaser, or be subject to any contract made before the date of the patent. The policy of the law is obvious. It was designed to protect the rights of a most meritorious class of citizens, who achieved the independence and glory of

their country. It invests them and their heirs with the legal title to their lands, free from all incumbrances arising from previous contracts. Such contracts cannot be enforced against them. This is the plain import and meaning of the act. The patentee is the only person who can claim the benefit of this statute, for it was designed exclusively for his protection. There was nothing in the condition of the country when this statute was passed, or in the circumstances of the persons for whose benefit it was enacted, to render this construction doubtful.

The complainant sets up a contract with Wills, and not with Buford, the patentee. Between these parties, the law cannot affect the contract. If Buford had conveyed to Wills, against him a court of chancery could decree a conveyance of the premises, though against Buford it could not. It seems Buford has not availed himself of the provisions of this statute. In pursuance, as he considered, of a contract for the sale of the warrant made long before the emanation of the patent with Wills, he conveyed the land to the respondents. If he has conveyed it incorrectly, the powers of a court of chancery cannot compel him to correct the error; but a court of chancery may give relief against the grantee, who had notice of the prior equity. In this case the defendants, with the notice, must be considered as invested with the equity of Wills, and no more; and if the act of congress could not affect the contract with Wills, it cannot prevent a recourse against the respondents. They must be considered as holding the land in trust for the complainant, in the same manner as Wills would have held it had the deed been made to him.

The objection that Buford is not made a party to the suit, remains to be considered. To sustain this objection, a decision lately made in the supreme court of the United States is relied on, in a case where Findlay and others are appellants, against Hinde and wife (1 Pet. [26 U. S.] 241). The title set up in that case by Hinde and wife, was derived from Garrison, and was evidenced by the following receipt: "Received, Cincinnati, 10th September, 1799, of Wm. and Michael Jones, fifty pounds thirteen shillings and three pence, in part of a lot opposite W. Carr's, in Cincinnati, for two hundred and fifty dollars, which I will make them a warrantee deed for, for the same, on or before the 20th day of this instant." Signed, Abraham Garrison. Some evidence was given of a deed executed to Wm. and Michael Jones by Garrison, but it was lost, and there was a failure of proof to establish it. The bill charged the defendants with having fraudulently, and with notice of the above title, obtained a conveyance from Garrison for the lot. In this case, the court held that Garrison should have been made a party, although it was in proof that he had conveyed to the defendants, against whom Hinde and wife sought a decree; and on this ground, the de-

cree of the circuit court was reversed. There is no difference, in principle, between that case and the one under consideration. The court say that "no decree can be made for the complainants, without first deciding that the contract of Garrison ought to be specifically decreed. He might insist the purchase money had not been paid, or make other various defences. It is not true, if he be made a party, no decree could be made against him. It might not be necessary to do any act, but it would be indispensable to decide against him the invalidity of his obligation to convey, and overrule such defence as he might make; and if the purchase money had not been paid, to provide by the decree for its payment, before any decree could be made against the defendants holding the title." In [Simms v. Guthrie] 9 Cranch [13 U. S.] 25, and in [Thornton v. Wynn] 12 Wheat. [25 U. S.] 193–196, the same principle is recognized. The court seem to have been unanimous in these decisions and the authority must be considered binding upon this court.

The bill must, therefore, be dismissed.

This case was appealed to the supreme court, and on the question of parties that court were divided in opinion. On the other points there was no difference of opinion. The decree of the circuit court was affirmed [unreported].